Matter of 3041 Ocean, Inc. v Seneca Ins. Co., Inc. (2026 NY Slip Op 50315(U))

[*1]

Matter of 3041 Ocean, Inc. v Seneca Ins. Co., Inc.

2026 NY Slip Op 50315(U)

Decided on March 13, 2026

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 13, 2026
Supreme Court, Kings County

In the Matter of the Application of 3041 Ocean, Inc., Petitioner,

againstSeneca Insurance Company, Inc., Respondent.

Index No. 544660/2025

Agulnick Kremin P.C., P.C., Melville (Scott Agulnick of counsel), for petitioner.Kennedys CMK LLP, New York City (Douglas Steinke of counsel), for respondent.

Aaron D. Maslow, J.

The following numbered papers were used in this special proceeding:
Submitted by Petitioner: NYSCEF Doc Nos. 1-6, 9, 17, 21.Submitted by Respondent: NYSCEF Doc Nos. 1015, 18-20.Filed by Court: NYSCEF Doc Nos. 7-8, 16.Upon the foregoing papers, having heard oral argument, and due deliberation having been had, the within special proceeding is determined as hereinafter set forth.
BackgroundThis is a special proceeding seeking Court appointment of an umpire to participate in the appraisal process pursuant to § 3408 of the New York Insurance Law. It was commenced on December 23, 2025, Petitioner 3041 Ocean, Inc. seeking the appointment of either CJ Anonucci of Nurziac Builders or Nick Russo of Branch Services, Inc. or another competent and disinterested umpire with experience and expertise in repairs and restoration of casualty loss. 
On or about December 17, 2023, Respondent Seneca Insurance Company issued or renewed a commercial property insurance policy, Policy No. XXXXX, providing coverage for [*2]the property located at 3041 Ocean Avenue, Brooklyn, New York, owned by Petitioner. The policy contained a provision specifying that if the parties disagreed on the value of the property or the amount of a loss, each one would select a competent and impartial appraiser and the two appraisers would select an umpire. If they could not agree, either party might request that the selection of an umpire be made by a judge of a court having jurisdiction.
On August 18, 2024, the property sustained damage due to a fire, a peril covered under the insurance policy. The parties are in dispute over the adjustment of the loss, Respondent offering $2,015,951.87, and Petitioner claiming it is $4,904,388.39. In furtherance of the policy provision regarding resolution of adjustment of a claim, the parties each appointed an appraiser. Respondent appointed Matthew Flax to be its appraiser, and Petitioner appointed Paul Zendler as its appraiser. Paul Zendler offered CJ Anonucci of Nurziac Builders and Nick Russo of Branch Services as potential umpires. Respondent claims that it proposed 14 persons to serve as umpire but they were rejected by Petitioner. In this proceeding it offers Anthony Valvano of ANC Construction and Edward J. Schlaffer of Frame Group, LLC.
In an interim order dated February 3, 2026, the Court adjourned the matter for the purpose of re-serving Respondent, and also directed, "Both sides shall submit CVs of proposed umpires" (NYSCEF Doc No. 8). CVs of Anthony Valvano and Edward J. Schlaffer were submitted by Respondent as NYSCEF Doc Nos. 12 and 13 respectively. No CVs were submitted by Petitioner.

Discussion
Insurance Law § 3408 provides in pertinent part as follows:
(a) Whenever application shall be made for the selection of an umpire pursuant to the provisions relating to appraisals contained in the standard fire insurance policy of the state of New York it shall be made to a justice of the supreme court residing in the county or to a county judge of the county in which the lost or damaged property is or was located. The application shall be on five days' notice in writing to the other party. Any such notice in writing, when served by the insured, may be served upon any local agent of the insurer.(b) The court shall, on proof by affidavit of the failure or neglect of the appraisers to agree upon and select an umpire within the time provided in such policy, and of the service of notice pursuant to subsection (a) hereof, forthwith appoint a competent and disinterested person to act as such umpire in the ascertainment of the amount of such loss or damage.The Court declines to appoint as umpire the two individuals proposed by Petitioner's appraiser: CJ Anonucci and Nick Russo. The Court was not provided with CVs for them. The Court Googled "CJ Anonucci" and no appraiser by that name came up. A CJ Antonucci Jr. apparently affiliated with Nurzia Construction Corporation appeared on Linked In, and so too did a Nick Russo apparently affiliated with Branch Services. However, the Court lacks an account with Linked In and, so, was unable to ascertain any substantial information on these two nominees. The Court did not espy any further information from them — as opposed to comments about them by others — in the initial Google search results. In any event, it is not the duty of the [*3]Court to search the Internet for information on a party's proposed umpires. It was Petitioner's responsibility to provide information about them and, in fact, Petitioner did not take advantage of the opportunity afforded by the Court to provide CVs
In another context, with regard to searching through potential source material, it has been stated: "While plaintiff [insurer] submits the transcripts of the claimants' EUOs, it does not cite to any line or page of the claimants' testimony to support such claims. The Court should not have to undertake the toilsome task of reading through pages and pages of testimony in order to ascertain which portions support plaintiff's supposed contentions" that there exists a founded belief that the alleged injuries did not arise from a covered accident. (Unitrin Advantage Ins. Co. v Advanced Orthopedics and Joint Preservation P.C., 2018 NY Slip Op 33296[U], *6-7 [Sup Ct, NY County 2018]). Similarly, it has been held, "It is not the duty of the arbiter, be it an arbitrator or Court, to parse though hundreds of pages of exhibits to make out a claim or defense for a party (see e.g. Barsella v. City of New York, 82 AD2d 747, 748 [1st Dept 1981]); such duty belongs to counsel, as advocate. Failing to elucidate evidence in support of a party's claim is not error of the arbitrator but is rather error of counsel, and such failure does not render an arbitrator's award arbitrary and capricious [citation omitted]." (Country-Wide Ins. Co. v M El Sayed Physical Therapy, P.C., 2022 NY Slip Op 31874[U], *2-3 [Sup Ct, NY County 2022].)
In accordance with the Court's February 3, 2026 interim order, Respondent submitted information about its two nominees: Anthony Valvano and Edward J. Schlaffer. Mr. Valvano is presently affiliated with ANC Construction. He lists himself as a general contractor. He claims to be in the construction and insurance claim restoration businesses for 40 years. He lists being a member of KSTV Adjusters from 1999-2012.
In Valvano v Kramer (2019 WL 453118 [NJ Super Ct, App Div 2019]), the court affirmed a trial court determination in connection with the dissolution of KSTV Adjusters that Mr. Valvano did not comply with his firm's Operating Agreement terms regarding expense reimbursements:
It is uncontroverted that Kramer, Smith and Torres complied with the procedures established for expense reimbursement, while Mr. Valvano did not. The expense reimbursement procedure is consistent with the terms of the Operating Agreement, and the expenses, as presented by the members, were properly deducted on the tax returns of KSTV. Further, except for the handwritten list of alleged expenses (Exhibit D-6), Mr. Valvano's claims for expenses are undocumented and not credible. (Id. at 2.)After finding that Mr. Valvano's former LLC co-members were entitled to a judgment of $68,059.96 against him, the trial court increased it to $116,283.58 when it was pointed out that Mr. Valvano had retained $48,223.62 in fees which were due KSTV.
In light of this stain on Mr. Valvano's record, the Court declines to appoint him as an umpire in the within insurance claim dispute.
Remaining for consideration is Edward J. Schlaffer, proposed by Respondent. According to the CV provided by Respondent, Mr. Schlaffer is the principal and co-founder of Frame Group, LLC. His expertise is described as:
Over three decades, Mr. Schlaffer has developed extensive experience in insurance property loss consulting, cost estimating, and general contracting. He specializes in large complex insurance/FEMA claims, including but not limited to: preparing highly detailed [*4]estimates; reports; and analyses of claim submissions. In addition, he has been retained as a building consultant on complex property losses, including, among others: high-rise buildings; resorts; housing complexes (both public and private); professional sports arenas; theaters; cathedrals; malls; manufacturing facilities; school districts, and residential properties. Other projects include FEMA claim preparation, Category E (permanent work) cost estimating and appeal services, property asset valuations, appraisal/umpire services and litigation support. In 2022, Mr. Schlaffer co-founded Frame Group LLC. Mr. Schlaffer and his team of highly qualified professionals support numerous clients spanning many industries (both public and private) throughout the United States. (NYSCEF Doc No. 13 at PDF 2.)Mr. Schlaffer claims certification in mold remediation from IAQ Training Institute, water damage restoration from the Institute of Inspection Cleaning and Restoration, and fire-water restoration from the Association of Specialists in Cleaning and Restoration. Among the recent engagements listed by him are the following:
• Supporting a large school district in Florida following Hurricane Ian — assisting the school district in the preparation and valuation of damages to FEMA and insurance carriers.• Retention as a building consultant for a large resort in the Virgin Islands damaged from Hurricanes Irma and Maria, including having segregated over $100 million between the two hurricanes.• Retention by both the insurance carrier and the owner of a professional sports arena to measure and scope the damages caused by Superstorm Sandy — completing the project on time and on budget while also relying on union labor.Based on this information provided by Mr. Schlaffer, which includes working with both policyholders and insurance companies, the Court finds him to be "a competent and disinterested person" to act as an appraisal umpire (Insurance Law § 3408 [b]).
The Court notes that at the hearing, it asked the parties to comment on two people identified through the Internet. However, as pointed out by Respondent, they are located in Florida. The Court agrees that someone located in the New York City metropolitan area would be more suitable.
"Special proceedings are reserved for limited types of dispute resolution in which speed is desirable. . ." (Vincent C. Alexander, Prac Commentaries, McKinney's Cons Laws of NY, CPLR C103:2 [2024]). "A special proceeding is a civil judicial proceeding in which a right can be established or an obligation enforced in summary fashion. Like an action, it ends in a judgment (CPLR 411), but the procedure is similar to that on a motion (CPLR 403, 409). Speed, economy and efficiency are the hallmarks of this procedure." (Id. CPLR C401:2.) As such, any further delay to consider other potential umpires for the instant insurance appraisal dispute would not do justice to the parties, who need to bring closure to their disagreement over the loss appraisal.

 Conclusion
Accordingly, it is hereby ORDERED AND ADJUDGED that the within petition pursuant Insurance Law § 3408 seeking appointment of a competent and disinterested umpire with [*5]experience and expertise in repairs and restoration of casualty loss is GRANTED TO THE EXTENT that the Court appoints Edward J. Schlaffer of Frame Group, LLC as umpire in the ascertainment of the amount of loss or damage to the premises at 3041 Ocean Avenue, Brooklyn, New York, occasioned due to fire on August 18, 2024.